[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10129
_____

D. C. Docket No. 2:12-cv-03646-AKK

CINDY LAINE FRANKLIN,

Plaintiff-Appellee,

versus

CHRIS CURRY,
individually,
JOHN SAMANIEGO,
individually, et al.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(December 23, 2013)

Before MARCUS, BLACK and RIPPLE,[*] Circuit Judges.

PER CURIAM:

_____

[*] The Honorable Kenneth F. Ripple, United States Circuit Judge for the Seventh Circuit, sitting by designation.

This case arises from Cindy Laine Franklin's allegation that Michael Keith Gay, a corrections officer at the Shelby County Jail, sexually assaulted her, and Franklin's ensuing lawsuit against Gay and various other officers at the jail. The officers other than Gay (Appellants or the Supervisory Defendants) moved for dismissal on the basis of qualified immunity. The district court denied the motion, and this interlocutory appeal followed. Upon review, we hold that Franklin has failed to plead a constitutional violation and that Appellants are therefore entitled to qualified immunity.

## I.    BACKGROUND

We begin with a recitation of the facts as drawn from Franklin's complaint. Although the complaint provides little information concerning the sequence and temporal relation of events, we must accept Franklin's well-pleaded allegations as true and draw all reasonable inferences in her favor. *See Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). [1]

As alleged in the complaint, on October 19, 2010, Franklin was transferred to Shelby County Jail as a pretrial detainee. During the ensuing booking procedure, Gay said to Franklin, "I want to see your rug." Franklin responded that Gay "would get in trouble," to which Gay replied, "there is nothing you can do."

---

[1] However, we afford no presumption of truth to legal conclusions and recitations of the basic elements of a cause of action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009); *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011).

As Gay took Franklin's fingerprints, he placed her hand on his genitals, causing Franklin to object and tell Gay to leave her alone.

Some time later, as Franklin slept in her cell, Gay jolted her awake by getting on top of her with his pants unzipped. Gay forced his penis into Franklin's mouth as she resisted. Franklin told her boyfriend and her parole officer about the incident, after which John Samaniego, a chief deputy at the jail, came to speak with her. [2] The Alabama Bureau of Investigation obtained a statement from Franklin and commenced a formal investigation of her claims. Franklin spoke with other female detainees who told her that Gay had sexually abused another female inmate and engaged in sex with another. Gay eventually resigned.

Franklin commenced the instant action against Gay, Chris Curry, Sheriff of Shelby County, and five other prison officials: Samaniego, the chief deputy who spoke with her about the assault; Chris George, Division Commander of Investigations; Chris Corbell, Division Commander of Uniform; Jay Fondren, Division Commander of Corrections; and Ken Burchfield, Division Commander of Administration. Franklin asserted constitutional claims under 42 U.S.C. § 1983 against all of the officers in their individual capacities. The Supervisory Defendants—Curry, Samaniego, George, Corbell, Fondren, and Burchfield—

---

[2] Franklin's complaint does not indicate the duration of her stay at the Shelby County Jail. However, counsel have stated in filings before the district court and in their brief on appeal that she was only there "a very short time."

3

moved to dismiss on the basis of qualified immunity.[3]  The district court denied the motion, finding that Franklin had asserted a violation of a clearly established constitutional right by alleging that she had been harmed by the Supervisory Defendants' deliberate indifference to a substantial risk of serious harm.  The Supervisory Defendants now appeal the district court's denial of their motion.

## II.    STANDARD OF REVIEW

A district court's denial of qualified immunity on a motion to dismiss is an appealable order that we review de novo.  *Rehberg v. Paulk*, 611 F.3d 828, 837 n.5 (11th Cir. 2010).

## III.   DISCUSSION

Qualified immunity shields government officials acting within their discretionary authority from liability unless the officials "violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).  The parties do not dispute that the Supervisory Defendants are government officials who were acting within the scope of their discretionary authority.  Thus, to evaluate their entitlement to qualified immunity, we ask whether Franklin has alleged a violation of a constitutional right and, if so, whether the constitutional right violated was clearly established at the time of the violation.  *Keating*, 598

---

[3] Franklin's claims against Gay are not a part of this appeal.

F.3d at 762.  We hold that Franklin failed to allege a violation of a constitutional right and thus falls short of this standard.

In determining whether Franklin alleged a constitutional violation, the district court made two related errors.   First, it applied an incorrect legal standard.  Second, the district court allowed Franklin to satisfy the standard it applied with conclusory allegations.  We address each error in turn.

## A.  *The Legal Standard for Deliberate Indifference*

In analyzing Franklin's claims against the Supervisory Defendants, the district court erred by finding allegations that they "knew or should have known" of a substantial risk of serious harm sufficient to state a deliberate indifference claim.  Deliberate indifference requires more than constructive knowledge.

The district court began its analysis correctly, stating that, "to establish supervisory liability under § 1983, a plaintiff must allege that the supervisor personally participated in the alleged unconstitutional conduct or that there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation."  D. Ct. Order at 6 (internal quotation marks and alterations omitted); *see Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  The district court then explained that a plaintiff can show a causal connection, inter alia, when "the supervisor's policy or custom resulted in deliberate indifference."  D. Ct. Order at 6 (internal quotation marks omitted).  To this point, the district

court's analysis was sound.  However, the court then went astray when it

concluded that Franklin had alleged a causal connection, stating:

> Franklin alleges that a causal connection exists because Sheriff Curry
> was *on notice* of Officer Gay's alleged conduct and the need to correct
> this practice, but failed to do so, and because Sheriff Curry's policy or
> custom resulted in deliberate indifference,

and

> [w]ith respect to Officers Samaniego, Burchfield, Fondren, Corbell
> and George, Franklin alleges that they too *knew or should have known*
> of Officer Gay's pattern of inappropriate conduct with female
> detainees and inmates but "were deliberately indifferent . . . ."

D. Ct. Order at 7 (emphasis added).  In reaching these conclusions, the district

court neglected to analyze whether Franklin had properly alleged deliberate

indifference.  In fact, the elements of deliberate indifference do not appear

anywhere in the district court's order.[4]

Its first step should have been to identify the precise constitutional violation

charged—in this case, deliberate indifference—and to explain what the violation

requires.  *See Baker v. McCollan*, 443 U.S. 137, 140, 99 S. Ct. 2689, 2692 (1979)

(before discussing liability in a § 1983 suit, "it is necessary to isolate the precise

constitutional violation with which [the defendant] is charged").  Had the district

---

[4] We do not suggest that district courts must recite a specific set of words in evaluating a claim, but without setting out even the basic contours of deliberate indifference, the district court was unable to properly analyze the sufficiency of Franklin's allegations.

court done so, Franklin's failure to allege the required elements would have been apparent.

Deliberate indifference requires the following: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013) (internal quotation marks omitted). Franklin's allegations that the Supervisory Defendants "knew or should have known" of a substantial risk clearly fall short of this standard. "Were we to accept that theory of liability, the deliberate indifference standard would be silently metamorphosed into a font of tort law—a brand of negligence redux—which the Supreme Court has made abundantly clear it is not." *Id.* at 1334. As we have stated, "[t]o be deliberately indifferent a prison official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." *Id.* at 1332 (internal quotation marks omitted). Franklin failed to allege the Supervisory Defendants *actually knew* of the serious risk Gay posed even in the most conclusory fashion. Because of this failure, Franklin did not allege a constitutional violation, and Appellants were entitled to qualified immunity.

*B. Franklin's Factual Allegations*

The district court's second error was finding purely conclusory allegations—i.e., a "formulaic recitation of the elements of a cause of action"—sufficient to satisfy the standard it applied. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). It is important that defendants be apprised of the conduct that forms the basis of the charges against them. Conclusory allegations fail to apprise defendants of the factual basis of the plaintiff's claims. Accordingly, the Federal Rules of Civil Procedure require a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specifically, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint's allegations must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Mere "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," and a plaintiff cannot rely on "naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and alteration

8

omitted); *see also id.* at 679, 129 S. Ct. at 1950 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010) (applying the standards described in *Iqbal* to a § 1983 case involving defendants asserting qualified immunity in place of the heightened pleading standard applied in prior cases).

Franklin's repeated allegations the Supervisory Defendants were deliberately indifferent or their actions constituted or resulted in deliberate indifference carry no weight. Similarly, by alleging Appellants "knew or should have known" of a risk, Franklin has merely recited an element of a claim without providing the facts from which one could draw such a conclusion. The district court found these allegations sufficient. Had the district court followed the Supreme Court's "two-pronged approach" of first separating out the complaint's conclusory legal allegations and then determining whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief," the insufficiency of Franklin's allegations would have been obvious. *See Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950; *see also Randall*, 610 F.3d at 709-10 ("A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth—legal conclusions must

be supported by factual allegations."); *accord Shay v. Walters*, 702 F.3d 76, 82 (1st Cir. 2012).

Stripping away Franklin's conclusory allegations leaves only a handful of properly pleaded facts—specifically, (1) that Gay verbally harassed Franklin and told her "there is nothing you can do," (2) that Gay sexually assaulted Franklin, (3) that Gay had previously sexually assaulted another female detainee, and (4) that Gay had previously had sexual relations with a third female detainee.  Given only these facts, Franklin's complaint is insufficient to state a plausible claim that each of the Supervisory Defendants should have known of a substantial risk that Gay would sexually assault Franklin, much less that each defendant was subjectively aware of the risk and knowingly disregarded it.  Franklin states that Sheriff Curry "failed to promulgate, to adopt, to implement or to enforce policies, rules, or regulations to safeguard female inmates," but she does not describe any of the policies that were in place, the sort of policies that should have been in place, or how those policies could have prevented Gay's harassment.  Similarly, Franklin alleges the names and titles of the other Supervisory Defendants[5] but alleges

---

[5] Appellants point to a related problem of Franklin grouping defendants together in a manner that makes it impossible to determine the unconstitutional conduct attributed to each one individually.  Our conclusions about the insufficiency of Franklin's allegations generally render analysis of this particular deficiency unnecessary except to emphasize the requirement that Franklin allege each Supervisory Defendant's subjective awareness of the risk of harm and that each of them exhibited deliberate indifference through his own actions.  Meeting these requirements without any individualized allegations other than Appellants' names and titles is unlikely.

10

nothing about the significance of their titles, their individual roles in the jail, their personal interactions or familiarity with Gay, their length of service, their management policies, or any other characteristics that would bear on whether they knew about but were deliberately indifferent to Gay's conduct and the risk he posed.[6]  From Franklin's allegations, a finder of fact could not even conclude that all of the Defendants were ever in the jail, much less that each of their individual actions constituted deliberate indifference to the risk Gay would abuse Franklin. Subjecting Appellants to the full "panoply of expensive and time-consuming pretrial discovery devices," *Nero Trading, LLC v. U.S. Dep't of Treasury*, 570 F.3d 1244, 1249 (11th Cir. 2009), and forcing them to defend this action based on Franklin's inadequate allegations not only runs counter to the general rules of pleading, it also undermines qualified immunity's fundamental purpose of protecting "all but the plainly incompetent or those who knowingly violate the

---

[6] Before the district court and in her appellate briefs, Franklin essentially conceded that her allegations concerning the Supervisory Defendants other than Curry were insufficient and attempted to excuse her lack of specificity by admitting that she simply does not know the details about the Supervisory Defendants' responsibilities at this stage.  Far from excusing her insufficient pleadings, this admission only reinforces our conclusion that her complaint was due to be dismissed.  In any event, Franklin cites no legal basis for her contention that her lack of knowledge should relax the pleading standard to which she is held.  *Cf. DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999) ("[T]he discovery process is not available where, at the complaint stage, a plaintiff has nothing more than unlikely speculations. While this may mean that a civil plaintiff must do more detective work in advance, the reason is to protect society from the costs of highly unpromising litigation.").

law" from the costs of suit. *Aschroft v. al-Kidd*, ___ U.S. ___, 131 S. Ct. 2074, 2085 (2011) (internal quotation marks omitted).

If anything, Franklin's allegations suggest that the policy of the jail was to promptly investigate claims of sexual harassment. She alleges that shortly after she reported Gay's conduct to her parole officer, a prison official discussed the attack with her, and an investigation commenced. Ultimately, the officer alleged to have engaged in wrongdoing resigned. In this way, Franklin's own allegations undercut the legal conclusions she asks us to draw from them and fail to allow a court "to draw [a] reasonable inference that the [Appellants are] liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.

Thus, even under the relaxed standard the district court applied, Franklin's conclusory allegations are insufficient to allege a constitutional violation. This provides an additional basis for Appellants' entitlement to qualified immunity.[7]

## IV.  CONCLUSION

---

[7] As part of their appeal, Appellants argue that under *Iqbal* supervisors can only be liable for constitutional violations if a plaintiff alleges purposeful and intentional conduct. We reject this argument. Appellants ignore the *Iqbal* Court's caution that "[t]he factors necessary to establish a [claim] will vary with the constitutional provision at issue." 556 U.S. at 676, 129 S. Ct. at 1948. The discussion of purposeful intent in *Iqbal* pertained to claims of invidious discrimination, not deliberate indifference. *See id.* Nothing in *Iqbal* suggests that supervisors cannot be held liable for deliberate indifference toward risks posed by their subordinates or that such liability requires a higher *mens rea* than any other deliberate indifference claim. So long as a supervisor's own conduct—and not that of his subordinate—constitutes deliberate indifference, his status as a supervisor changes nothing. *See id.*

12

In light of the foregoing, Franklin failed to allege a constitutional violation, and the district court erred in denying Appellants' motion to dismiss.

**REVERSED.**